**E-FILED on** ___7/28/08___

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAFAEL DIAZ,<br><br>    Plaintiff,<br><br>    v.<br><br>SAFEWAY INC.<br><br>    Defendants. | No. C-07-01902 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Defendant Safeway Inc. ("Safeway") moves for summary judgment as to all remaining claims asserted in plaintiff Rafael Diaz's amended complaint. For the reasons stated below, the court finds that there is no issue of material fact as to plaintiff's claims and grants defendant's motion for summary judgment.

## I. BACKGROUND

### A.    Factual History

Diaz was an employee of Safeway from 1988 until the termination of his employment on March 15, 2005. During his 17 years with Safeway, plaintiff worked his way up from seafood and meat clerk to Meat Manager. Complaint ¶ 10. In August 2002, his daughter died of Sudden Infant Death Syndrome, causing Diaz to suffer severe depression, which he continues to suffer. In the fall

of 2002, he was transferred to the Sunnyvale store, where he had "problems adjusting to work" and alleges that he made "requests for a new work environment." *Id.* ¶ 14.  In 2003, a new Meat Merchandiser, Lisa Benson ("Benson"), began working at the Sunnyvale store.  Although he claims she was aware of his depression, Benson allegedly "verbally and continually harassed" and "disrupted the work floor with her yelling and criticisms." *Id.* ¶ 17.  Diaz complained to Human Resources in September 2004 that Benson was a bad manager.  Diaz Decl., Ex. D 48:3-11 (Diaz deposition).

On December 26, 2004, Diaz weighed and priced six trays of shrimp at the request of another employee, Alonzo Anderson ("Anderson").  Although the details of the transaction are disputed, Diaz admits to substantially discounting the shrimp.[1] *Id.* at 169:9-16.  In January 2005, Safeway suspended Diaz pending an investigation into potential misconduct with regard to the sales of shrimp.  Diaz alleges that Safeway "repeated the false statement that Diaz 'stole' from Safeway . . . to persons who had no interest in, or right to, these statements." Complaint ¶ 26.  Diaz also alleges that Safeway failed to conduct a proper investigation because it destroyed or eliminated the surveillance tape of the shrimp sales transaction and it failed to evaluate the impact of Diaz's depression on his ability to price the shrimp.  *Id.* ¶ 28.  On March 15, 2005, Safeway discharged Diaz.

Safeway and the Union, on Diaz's behalf, held arbitration hearings on November 2 and December 27, 2005.  Diaz alleges that the Union failed to contact crucial witnesses whose names he provided to the Union.  The Union also allegedly "failed to go over the strategy and presentation at the Hearing" despite Diaz's requests that they prepare him for the hearing.  *Id.* ¶ 32.  On March 3, Diaz filed a complaint with the Department of Fair Employment and Housing ("DFEH") alleging complaints against both Safeway and the Union, but the DFEH did not respond to his complaints against the Union.  On March 5, 2006, the DFEH issued a Right to Sue letter.  On March 31, 2006, the arbitrator for the grievance ruled that Safeway was justified in terminating Diaz's employment.

---

[1] Plaintiff admits to signing defendant's Safeway Meat and Seafood Policies which stated that reductions on product should begin at no greater than 10% with final reduction at no greater than 25%.  Diaz Dep. 59:4-14 & Ex. 5 at 6.  On December 30, 2004, plaintiff discounted and sold shrimp to Anderson at a 60% discount.  *Id.* at 102:9-14.  Plaintiff admits to reducing the shrimp but maintains that he did this in accordance with Benson's instructions during a management conference call where Benson told Diaz and others to "Reduce all the stuff.  Get rid of it.  I don't care.  Do what you got to do to get rid of the stuff that you got [sic] over." *Id.* at 81:13-22.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-07-01902 RMW
NED                                            2

### B. Procedural History

On March 5, 2007, Diaz filed a six-count complaint in the Santa Clara County Superior Court against Safeway and the Union, which set forth claims for (1) discrimination and retaliation in violation of the California Fair Employment and Housing Act ("FEHA"), Government Code § 12940 *et seq.*, (2) violation of the California Family Rights Act ("CFRA"), Government Code § 12945.2, (3) tortious wrongful termination of employment, (4) intentional infliction of emotional distress, (5) defamation, and (6) invasion of privacy. Defendants removed the case to federal court and moved to dismiss under Rule 12(b)(6). Safeway moved to dismiss claims (1), (2), (4) and (5). The Union moved to dismiss all claims against it. The court granted defendants' motions in an order dated June 14, 2007 and dismissed the Union as a defendant. The court reconsidered its dismissal and allowed Mr. Diaz to amend his complaint. Defendants again moved to dismiss. In an order dated September 21, 2007, the court found that Mr. Diaz had failed to plead facts sufficient to toll the statute of limitations on the previously dismissed claims, and again dismissed them. Only claims (3), (5) and (6) as to Safeway remain in this case.

## II. ANALYSIS

### A. Legal Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 472 U.S. 242, 248 (1986). For a dispute to be genuine, there must be sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party meets the burden of showing that the claim has no merit by proving that there is an absence of evidence to support the nonmoving party's case. *Shwarz v. United States*, 234 F.3d 428, 436 (9th Cir. 2000).

### B. Wrongful Termination in Violation of Public Policy

Although employers traditionally enjoy broad authority to discharge at-will employees, judicial authorities have established that this ability is limited by statute and by considerations of public policy. *Tameny v. Atl. Richfield*, 27 Cal. 3d 167, 172 (1980). In order to state a claim for wrongful termination in violation of public policy, a plaintiff must establish that there was an employer-employee relationship, a termination of employment or other adverse employment action, that the termination was a violation of a public policy, that the termination was the legal cause of plaintiff's damage and that the plaintiff suffered damage. *City of Moorpark v. Super. Ct.*, 18 Cal. 4th 1143, 1159 (1998). "[T]ethering public policy to specific constitutional or statutory provisions serves not only to avoid judicial interference with the legislative domain, but also to ensure that employers have adequate notice of the conduct that will subject them to tort liability to the employees they discharge." *Grant-Burton v. Covenant Care, Inc.*, 99 Cal. App. 4th 1361, 1372 (2002).

To be classified as a public policy, a policy must be based on a statutory or constitutional provision. *Green v. Ralee Eng. Co.*, 19 Cal. 4th 66, 79 (1998). Plaintiff claims that the termination of his employment was a violation based on the public policy established in California's FEHA. Cal. Gov. Code § 12940. FEHA prohibits employment discrimination on certain enumerated protected categories such as race, sex, age and physical or mental disability. *Id.* Because Title VII and FEHA use similar language and have the same purpose, courts often look to federal interpretations of Title VII in deciding FEHA cases. *Los Angeles County Dep't of Parks & Recreation v. Civil Serv. Comm'n*, 8 Cal. App. 4th 273, 280 (1992). The inclusion of mental disability in FEHA benefits the public "because any type of invidious discrimination forments strife and unrest." *City of Moorpark*, 18 Cal. 4th at 1160. FEHA further protects employees by not only making discrimination based on protected categories illegal, but details other "protected activity" that an employer cannot use to discharge or discipline employees. For example, an employer cannot retaliate against an employee for opposing any practice forbidden under FEHA or refuse to reasonably accommodate an employee with a known disability. Cal. Gov. Code § 12940; *Spitzer v. Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1383 (2000).

### 1. Nexus between Disability and Adverse Employment Action

Plaintiff must first establish a prima facie case of discrimination. *See, e.g., Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000) (to establish prima facie case plaintiff must prove that he is a member of a protected class and some other circumstance suggesting discriminatory motive). In order to state a claim under FEHA, there must be a nexus between an employee's protected activity and the adverse action taken by the employer against the employee. *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1258-59 (1994) (nexus proven when plaintiff provided evidence that she was discharged because of her refusal to commit unlawful acts). Plaintiff has not provided evidence that his employment was terminated or that he was harassed because of a mental disability.

Plaintiff testified at his deposition that his supervisor, Lisa Benson ("Benson"), would talk to him rudely and "come at him hard." Decl. Mark Rogers Ex. A (Diaz Deposition) 53:24-25. Plaintiff does not submit any evidence that he was harassed *because* of his disability, he solely complains that Benson was rude to him and essentially a bad manager. Am. Compl. at 2. When asked about his complaints of discrimination, plaintiff stated "that came out wrong. It was just - yeah, that came out wrong. Talking [sic] about that I wasn't treated right." Diaz Dep. 189:15-17.[2] Under FEHA, a plaintiff must show that the adverse employment action was taken because of a protected characteristic. *Harvey v. Sybase, Inc.*, 161 Cal. App. 4th 1547, 1559 (2008); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (stating that one of the elements of a prima facie case under FEHA is that a causal link existed between the protected activity and the employer's action).

"FEHA addresses discrimination . . . it is not a shield against harsh treatment at the workplace." *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008); *see also Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 258 (1st Cir. 1999) (plaintiff who worked in "wretchedly hostile environment" failed to present significantly probative evidence that harassment was due to

---

[2]  Q.  "If you turn to the second page there [referencing Exhibit 17, Plaintiff's Initial Case Management Conference Statement], I see under the fax [sic] section you mention in that first sentence that you had, quote, 'Complained about discrimination and harassment in the workplace,' close quote. What were you referring to there in terms of complaints about discrimination?
 A.  "Oh, that came out wrong. It was – it was just — yeah, that came out wrong. Talking about that I wasn't treated right."
Diaz Dep. 188:25; 189:1-17.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-07-01902 RMW
NED                                                                      5

plaintiff's race and summary judgment was upheld for employer).  Plaintiff also testified that Benson had a similar abrasive management style with all but one of eighteen other managers. *Diaz Dep.* at 44:4-22.  From plaintiff's testimony, it appears that other managers were treated similarly, therefore, plaintiff has failed to establish that actual discrimination occurred. *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335-36 (1977) (stating that in order to prove discrimination, plaintiff has to prove that there was disparate treatment based on protected characteristics).  The behavior that plaintiff complained about, verbal abuse by Benson, was experienced by all managers and was thus not discriminatory in nature and not protected by FEHA.

Plaintiff cannot rely solely upon the fact that he was seeking psychiatric help as a basis for his discrimination claim.  Even though defendant was aware that he was seeing a psychiatrist to deal with his mental disability, plaintiff must prove that there was a causal link between his disability and his employment termination. *Harvey*, 161 Cal. App. 4th at 1559; *Guz*, 24 Cal. 4th at 355.  As discussed above, it does not appear from the evidence on record that Benson's behavior toward plaintiff, even to the extent it could be considered to have been related to the termination of his employment, was directed specially toward plaintiff because of his mental disability.  Because FEHA only protects an employee who is discriminated against or harassed *because* of his disability, plaintiff cannot establish that the termination of his employment was in violation of public policy as established by FEHA.

None of plaintiff's complaints to Human Resources and others were based on discrimination because of his disability.  Plaintiff testifies in his deposition that his complaints to Human Resources regarded his opinion that Benson was "essentially a bad manager" and did not mention to Human Resources that he was seeing a psychiatrist or that he had lost a daughter.  Diaz Dep. 48:8-11; 55:21-24.  The behavior by Benson described by plaintiff and his subsequent complaints about it stemmed from what plaintiff thought of as poor management.  He never referenced his disability as a motivating factor for Benson's behavior.  Diaz Dep. 73:21-22; 69:20-21; 54:22; 47:25 ("She was verbally abusive . . . and would cuss."; "I wasn't getting along with Lisa Benson."; "She had a little attitude."; "She was essentially a bad manager."; "She'd come at me.").  Although plaintiff may have been mistreated by Benson and other managers, if it was not because of his mental disability, there is

no violation of FEHA. *Rene v. MGM Grand Hotel, Inc.*, 243 F.3d 1206, 1209 (9th Cir. 2001) (discrimination based on non-protected categories, however unfortunate, does not fall within purview of Title VII).

### 2. Plaintiff's Claim for Failure to Provide Reasonable Accommodation

Plaintiff also alleges that defendant's actions fall within FEHA for failing to provide plaintiff reasonable accommodation for his disability. Am. Compl. at 4. Under FEHA, an employer's failure to provide reasonable accommodation for an employee with a known disability constitutes an unlawful employment practice. Cal. Gov. Code § 12940(m); *Spitzer*, 80 Cal. App. 4th at 1383. Plaintiff claims that defendant violated FEHA when it failed to transfer him to another store appropriate for his limitations, evaluate the ongoing accuracy of his pricing skills and assign other employees to assist him. Compl. ¶ 8. But the evidence shows that plaintiff never requested accommodation from his employer.

The responsibility for asking for accommodation lies primarily with employee. *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443 (2007). Employees cannot demand clairvoyance of employers. *Id.* A employee is obliged to tender specific requests for necessary accommodations. *Id.* In *King*, for example, the employee brought in a doctor's note which released him to his regular duty and hours. The employee apparently was still suffering from a blood disorder but this fact "simply does not establish that he communicated his distress to his supervisors or made the kind of specific request . . . to trigger an employer's duty to provide accommodation." *Id.* at 444. Here, although plaintiff's Amended Complaint alleges that he requested accommodation to deal with the death of his daughter, his deposition establishes that he never asked specifically for time off because of his mental disability. Diaz Dep. 190:25; 191:1-4. Plaintiff merely alleges that on isolated occasions he informed his employer that he was being treated for depression. Compl. ¶ 12. On the evidence presented, defendant could not have been aware that plaintiff needed assistance in pricing or that he needed to be transferred to another store to accommodate his disability. Therefore, defendant is not liable for failing to accommodate plaintiff. *King*, 152 Cal. App. 4th at 444.

### 3.   Non-Discriminatory Motive for Termination

Even if there was a material issue of fact about whether plaintiff was engaging in protected activity and was covered under FEHA, defendant establishes that it had a legitimate, non-discriminatory motive for terminating plaintiff. Assuming that plaintiff had met his burden to establish a prima facie case, defendant can rebut this by " articulating some legitimate, non-discriminatory reason" for its decision to terminate plaintiff's employment. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If defendant can articulate such a reason, plaintiff must present "specific, substantial evidence" that the reason is pretextual. *Guz*, 24 Cal. 4th at 356. In some cases, the evidence will establish mixed motives for an employment decision. *Harvey*, 161 Cal. App. 4th at 1559. In such cases, plaintiff's initial burden is to prove that discrimination was a motivating factor or played a substantial role in the adverse employment action, even if other factors were involved. *Grant-Burton*, 99 Cal. 4th at 1379. This shifts the burden to the employer to prove by a preponderance of the evidence that it would have made the same decision even if it had not taken the illegitimate reason into account. *Id.*

Defendant asserts that it would have taken the same action regardless of the illegitimate reason asserted by plaintiff. Because Alonzo Anderson was also fired after the investigation for the wrongful discounting of shrimp, defendant shows that the incident was not merely a pretext for his unlawful termination. Oleson Decl. ¶ 6. Plaintiff goes to great lengths to challenge the validity of the investigation that resulted in the termination of his employment as evidence that the shrimp discounting was merely a pretext in order to fire him for complaining about Benson. Compl. ¶ 28; Am. Compl. at 2. The California Court of Appeal has addressed a similar argument before. *King*, 152 Cal. App. 4th at 432. In *King*, the plaintiff argued that he was similarly fired for his disability and that his violations of company policy were merely a pretext for this discrimination. *Id.* King detailed his 30-year tenure with the defendant and complained of a conspiracy by managers to terminate his employment after an illness required his absence from work for several months. *Id.* at 434. The plaintiff focused on his asserted innocence of the alleged violations to establish that his termination was merely a pretext for his employer's discriminatory actions. *Id.* at 440. The court stated that it was "unwilling to compel employers to undertake a precise type of investigation" and

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-07-01902 RMW
NED                                                           8

that the case had nothing to do with whether plaintiff was *actually* guilty of the violation, but whether defendant had a good faith belief that he violated the policy when they fired him. *Id.* at 439, 429.

Likewise in the case at bar, plaintiff's quarrels with the conduct of the investigation are irrelevant: plaintiff admits to reducing shrimp from $17.99 to $7.99. Diaz Dep. 102:9-14. Plaintiff acknowledges that he signed company policies stating that any discounts require express approval from the Meat Merchandiser. Rogers Decl., Ex. 5 at 6. Therefore, the discount that plaintiff applied to the shrimp was in violation of defendant's written policies. Diaz Dep. 59:4-14. Defendant considered this a serious violation and fired both plaintiff and Anderson, the employee who bought the abnormally discounted shrimp. Because plaintiff fails to establish that his disability was a substantial factor in his dismissal and defendant asserts a legal, non-discriminatory reason for terminating plaintiff's employment, the claim for wrongful termination in violation of public policy under FEHA fails.

Based on the arguments and evidence submitted by both parties, defendant has carried its burden on summary judgment by showing both that plaintiff lacks an element of his asserted claim and alternatively that defendant has a complete defense to the claim and therefore no reasonable juror could return a verdict in favor of plaintiff.

> "If the employer presents admissible evidence either that one or more of plaintiff's prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing."

*Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 344 (2008). Plaintiff has not shown specific, substantial evidence that defendant's decision was pretextual either "directly, by showing that unlawful discrimination more likely motivated the employer" or "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable ." *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1127 (9th Cir. 2000).

### C.    Defamation

Plaintiff alleges defamation in connection with the termination of his employment. This claim is based on two instances: (1) during a conference call with other managers, Oleson allegedly stated, without ever referencing plaintiff, that a meat manager had been fired for reducing shrimp for an employee and; (2) another employee heard that plaintiff had been accused of reducing shrimp for a fellow employee. Diaz Dep. 197:8-14; 195:7-16. Plaintiff heard about both of these incidents within a few months of the termination of the plaintiff's employment on March 15, 2005. *Id.* at 194:17-19.

The tort of defamation requires a publication that damages plaintiff and that is false, defamatory and unprivileged. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). Both instances that plaintiff points to are not defamatory because an employer's "common interest" discussions with employees are presumptively privileged. *Manguso v. Oceanside Unified Sch. Dist.*, 153 Cal. 3d 574, 580 (1984). This privilege does not apply, however, if the employer acted with malice. Cal. Civ. Code § 47(c).

A common interest is meant to advance or protect the interests of the parties to the communication. Cal. Civ. Code § 47(c). An employer has a common interest with employees to preserve adherence with company policies. *King*, 152 Cal. App. 4th at 440. In *King*, the plaintiff's supervisor told many employees about the plaintiff's termination and reasons behind it in order to reassure them and boost morale. *Id.* at 441. The court determined that this was clearly a privileged communication and upheld summary judgment in favor of the defendant. *Id.*

As to plaintiff's contention that the conference call is grounds for defamation, any communication between managers about the termination of plaintiff's employment is clearly privileged and not a basis for defamation. This is particularly true where, as here, plaintiff's name was not mentioned. Plaintiff's second alleged incident of defamation was a truthful statement. Plaintiff claims that an employee heard that plaintiff had been accused of reducing shrimp for another employee – which is completely true. Diaz Dep. 195:7-11. Therefore this statement cannot be the subject of a defamation claim. *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 581-82 (1996) (stating that truth is an absolute defense to defamation, regardless of malice).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-07-01902 RMW
NED                                        10

**United States District Court**
For the Northern District of California

Because defendant submits sufficient undisputed evidence that its statements were either true or were privileged communications without malice, plaintiff's defamation claim fails.

### 1. Statute of Limitations and Equitable Tolling

Alternatively, plaintiff's defamation claim is barred by the one-year statute of limitations. Cal. Civ. Proc. § 340. Since plaintiff discovered both incidents of alleged defamation soon after the termination of his employment in March 2005 and did not file his defamation suit until two years later, his defamation claim is barred by the statute of limitations. Plaintiff argues that the statute of limitations was tolled while he pursued his administrative remedies. Opp'n at 19. The California Supreme Court has outlined when equitable tolling in such situations is appropriate: Plaintiff must establish "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137-38 (9th Cir. 2001). To satisfy the second requirement "the facts of the two claims should be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Id.* at 1138. Here, plaintiff originally asserted that he was terminated without just cause and his case was arbitrated according to the collective bargaining agreement. Oleson Decl., Ex. A (Arbitrator's Opinion and Award). This administrative proceeding regarding plaintiff's investigation and termination would not put defendant on notice to investigate and defend a defamation claim. Because plaintiff failed to raise his defamation claims until almost two years after he discovered them, he is not entitled to equitable tolling. *Lehman v. United States.*, 154 F.3d 1010, 1016 (9th Cir. 1998) (stating that courts apply the equitable tolling doctrine sparingly).

### D. Invasion of Privacy

Plaintiff alleges that defendant disclosed to other employees the details regarding the termination of his employment in violation of the right of privacy under the California Constitution Article I, § 1. Compl. ¶ 72. Plaintiff's claim is based on the same two instances that form the basis of his defamation claim. Invasion of privacy requires that plaintiff prove a legally protected privacy interest, a reasonable expectation of privacy in the circumstances and that defendant's conduct

constitutes a serious invasion of that privacy. *Hill v. National Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994).

Plaintiff's claim fails because defendant's conduct was not a sufficiently serious invasion of privacy and plaintiff did not have a reasonable expectation of privacy in the circumstances. In order to qualify as an invasion of privacy, the disclosure must constitute "an egregious breach of the social norms underlying the privacy right." *Id.* at 37. In *Hill*, the California Supreme Court found that direct observation of urination by a monitor was a sufficiently egregious invasion into this conventionally private activity. *Id.* at 43. Plaintiff's evidence, by contrast, fails to show that the invasion of his privacy was egregious since he was not named in the management call and it is not unreasonable, in the ordinary course of events, that management would discuss the termination of a manager.

Similar considerations speak to plaintiff's reasonable expectation of privacy. Most employees understand that management will discuss major events such as a managerial termination. As this is not an egregious breach, it is similarly not reasonably expected to remain private. The management conference call never mentioned plaintiff's name and the obscure allegation that someone heard plaintiff was accused of selling reduced shrimp to an employee is not a breach against reasonable expectations of privacy. *Compare Payton v. City of Santa Clara*, 132 Cal. App. 3d 152, 153-54 (1982). In *Payton*, the employer wrote a memo addressed solely to plaintiff detailing the reasons for his termination and then posted the memo, without plaintiff's knowledge or consent, on the bulletin board in the employee break room that over 40 people used. *Id.* The Court of Appeal held that plaintiff had stated a sufficient case of invasion of privacy to withstand a general demurrer. *Id.* at 155. This situation is factually distinguishable: plaintiff only presents two instances where any information was disclosed, only one of which he was named specifically and none of which was even alleged to have been distributed at large to employees; in *Payton*, it was reasonable for the plaintiff to expect a memo solely addressed to him would remain private and it was an egregious breach when it was posted for over 40 people to see. Here, plaintiff could reasonably expect management and other employees to discuss the circumstances surrounding the termination of his employment. Plaintiff's Opposition relies mainly on jury instructions for invasion of privacy

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—No. C-07-01902 RMW
NED                                                                                          12

and does not attempt to rebut defendant's arguments that there is no reasonable expectation of privacy in the circumstances and that the breach was not egregious. Opp'n at 15.

Because defendant has proven that one or more of the elements for invasion of privacy is lacking and plaintiff did not carry his burden to prove that there is an issue of material fact, defendant's motion for summary judgment on plaintiff's invasion of privacy claim is granted.

### III. ORDER

For the reasons stated above, the court finds that there is no issue of material fact as to plaintiff's claims for wrongful termination in violation of public policy, defamation and invasion of privacy. The court grants defendant's motions for summary judgment.

DATED: 7/25/08

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

David G. Herns          dherns@aol.com

**Counsel for Defendants:**

Mark John Rogers        mjr@dillinghammurphy.com
William F. Murphy       wfm@dillinghammurphy.com

Counsel are responsible for distributing copies of this order to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   7/28/08                           /s/ MAG
                                       **Chambers of Judge Whyte**